794 F.2d 478
 Russell J. SANDERS, Joe Sanders, and Laquetta Sanders,
Plaintiffs-Appellants,
v.
Jimmie KENNEDY, Chief of Police Don Roth; E. Llewellyn
Overholt, Jr., Ben Bay; Mariam Kaywood; Irv
Pickler; et al., Defendants-Appellees.
 No. 84-6370.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 3, 1985.
Decided July 14, 1986.
 
 E. Thomas Barham, Jr., Shirley Ostrow, Los Alamitos, Cal., for plaintiffs-appellants.
 Jeffrey Epstein, Cotkin, Collins, Kolts & Franscell, Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before FLETCHER, PREGERSON, and CANBY, Circuit Judges.
 PER CURIAM:
 
 
 1
 Russell Sanders, Joe Sanders and LaQuetta Sanders (the Sanders) appeal the district court's dismissal of their action brought under 42 U.S.C. Sec. 1983. The Sanders' complaint alleged that members of the Anaheim police department damaged their property, subjected them to an unlawful search, and deprived Russell Sanders of his liberty without probable cause. The Sanders contended that these acts violated their rights under the fourth and fourteenth amendments. They further alleged that these acts were done under color of law and pursuant to official policies, practices, and customs of the City of Anaheim, its Chief of Police, and its City Council. The district court, relying on the analysis in Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981),[1] dismissed the Sanders' fourth amendment and due process claims because a post-deprivation state tort remedy was available. The court also dismissed the chief of police and city council members because they were not personally involved in the deprivations of the Sanders' civil rights.
 
 
 2
 We reverse. The district court erred in dismissing the Sanders' fourth amendment claim because the Parratt analysis is not applicable to a claim brought under the fourth amendment. The court also erred in dismissing the Sanders' fourteenth amendment due process claims because the plaintiffs allege that these injuries were the result of official practices and procedures, and not random acts. Finally, the district court erred in dismissing the complaint against the Chief of Police Kennedy and the Anaheim City Council because the Sanders' complaint sought to establish the defendants' section 1983 liability on the basis of official policies and customs, and not on a theory of respondeat superior.
 
 FACTS
 
 3
 On June 4, 1984, the Sanders filed a complaint against the City of Anaheim, Chief of Police Kennedy, thirty-four police officers, and five Anaheim City Council members. The complaint sought relief based on 42 U.S.C. Secs. 1983, 1985(3) and 1986, as well as on various pendent state grounds.[2] The complaint alleges that on July 24-25, 1983, the Anaheim police embarked on a ten-hour siege of the Sanders' residence. During the siege, helicopters swooped over the house at low altitudes.[3] At the end of the siege, marbles or other missiles were thrown or shot by slingshots at the residence. Numerous windows were broken, stucco was chipped from the house, and the garage door was so badly damaged that it had to be replaced. The metal bodies of vehicles parked in the driveway were damaged by the projectiles.
 
 
 4
 The Sanders' complaint further alleges that the police entered upon the premises and punctured the tires of vehicles. The officers arrested Russell Sanders after he came out of the house. Subsequently, the police entered the Sanders' dwelling without a warrant, searched its interior and, in doing so, ransacked the interior by opening drawers and dumping out their contents.
 
 
 5
 On July 30, 1984, the defendants moved to dismiss the Sanders' complaint. The district court granted the defendants' motion pursuant to Fed.R.Civ.P. 12(b)(6). The defendants' motion was granted with prejudice in federal court, but without prejudice to filing state tort claims in state court. The Sanders timely appealed.
 
 DISCUSSION
 I. Standard of Review
 
 6
 A dismissal for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) is a ruling on a question of law and, as such, is freely reviewable by this court. Alonzo v. ACF Property Management, Inc., 643 F.2d 578, 579 (9th Cir.1981). Such a dismissal cannot be upheld unless it appears to a certainty that the plaintiff would not be entitled to relief under any set of facts that could be proved. Halet v. Wend Investment Co., 672 F.2d 1305, 1309 (9th Cir.1982). All material allegations in the complaint are to be taken as true and construed in the light most favorable to the non-moving party. North Star International v. Arizona Corp. Commission, 720 F.2d 578, 580 (9th Cir.1983).
 
 II. The Sanders' Fourth Amendment Claims
 
 7
 The Sanders contend that they suffered two kinds of violations of their fourth amendment rights. First, they contend that the arrest of Russell Sanders was an unlawful seizure because it was made without probable cause. Second, they claim that the Anaheim police's entry into, and search of, their dwelling was illegal because the entry and search were without consent or a warrant and no exigent circumstances were present. The district court held that Russell Sanders's contention that he was unlawfully arrested does not state a claim for relief under section 1983. The court also dismissed the Sanders' fourth amendment claims on the grounds that adequate state tort remedies were available to them under state law.[4] We reverse.
 
 
 8
 The district court erred in concluding that Russell Sanders failed to state a claim for a violation of his constitutional rights. His allegations of his unlawful arrest without probable cause after a ten-hour siege that involved the use of extensive force state a claim for relief under the fourth amendment. We recently stated in Robins v. Harum, 773 F.2d 1004, 1008 (9th Cir.1985) that "[a] section 1983 claim based on a violation of the Fourth Amendment is on solid ground in this circuit." We have held that other plaintiffs who raised fourth amendment claims similar to Russell Sanders's were entitled to relief under section 1983. See, e.g., McKenzie v. Lamb, 738 F.2d 1005, 1007 (9th Cir.1984) (an arrest without probable cause gives rise to a cause of action for damages under section 1983); MacDonald v. Musick, 425 F.2d 373, 377 (9th Cir.) (defendant who asserts his arrest was unlawful, that he had a right to resist, and that he sustained injuries as a result of his resistance has a section 1983 claim), cert. denied, 400 U.S. 852, 91 S.Ct. 54, 27 L.Ed.2d 90 (1970); Cohen v. Norris, 300 F.2d 24, 31-32 (9th Cir.1962) (en banc) (reversing dismissal of complaint alleging illegal search and seizure accomplished through the use of excessive force).
 
 
 9
 The district court also erred in relying on the analysis in Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), as the basis for dismissing the Sanders' fourth amendment claims. We recently held in Robins, 773 F.2d at 1009, that the Parratt analysis does not apply to claims brought under the fourth amendment.[5] The Sanders, who have properly alleged deprivations of their rights protected under the fourth amendment, are entitled to pursue their fourth amendment claims in a section 1983 action despite the availability of state tort remedies.
 
 III. The Sanders' Fourteenth Amendment Claims
 
 10
 The Sanders' section 1983 complaint alleges that they suffered deprivations of their property and liberty without due process in violation of the fourteenth amendment. The district court dismissed these claims on the basis of the analysis in Parratt. We reverse.
 
 
 11
 The availability of a state tort remedy does not bar due process claims brought under section 1983 in cases where a plaintiff is challenging an established state procedure. Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36, 102 S.Ct. 1148, 1157-58, 71 L.Ed.2d 265 (1982). The Parratt analysis only applies in cases involving random and unauthorized acts. See, e.g., Rutledge v. Arizona Board of Regents, 660 F.2d 1345, 1352 (9th Cir.1981) (Parratt analysis applicable to a claim that a coach assaulted a football player at a state university), aff'd on other grounds sub nom. Kush v. Rutledge, 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983). We have recently affirmed the above principles, and defined their scope, in a trilogy of cases decided en banc. See Haygood v. Younger, 769 F.2d 1350, 1359 (9th Cir.1985) (en banc) (Logan, not Parratt, applies in a case involving a wrongful deprivation of liberty resulting from affirmatively enacted or de facto policies, practices, or customs), cert. denied sub nom. Cranke v. Haygood, ------ U.S. ------, 106 S.Ct. 3333, 92 L.Ed.2d 739 (1986); Piatt v. MacDougall, 773 F.2d 1032, 1036 (9th Cir.1985) (en banc) (Parratt inapplicable to cases involving deliberate, considered, planned or prescribed conduct by state officials, whether or not such conduct is authorized); Bretz v. Kelman, 773 F.2d 1026, 1031-32 (9th Cir.1985) (en banc) (Parratt is directed at minor infractions of prisoners' interests, when the alleged conduct is random and unauthorized; the Parratt analysis is inapplicable to a claim of conspiracy which, by definition, cannot be a random act).
 
 
 12
 In the present case, the Sanders have alleged sufficient facts to sustain a section 1983 claim under Logan and the Haygood trilogy. The Sanders' complaint alleges that the appellees' intentional acts resulted in substantial damage to their home and motor vehicles, and unlawfully deprived Russell Sanders of his liberty. The Sanders contend that these acts were authorized by city officials and were carried out under color of law. They further contend that these acts were performed pursuant to an official policy, practice, and custom, and were neither random nor unauthorized. Because these allegations, which we must take as true, show that the Sanders' due process claims fall under Logan rather than Parratt, the district court erred in dismissing these claims.
 
 
 13
 IV. The Dismissal of Chief Kennedy and the Members of the
 
 City Council
 
 14
 The final issue on this appeal is whether defendants Chief Kennedy and the members of the Anaheim City Council may be sued under section 1983. The district court dismissed these defendants on the grounds that the Sanders' complaint did not allege that Chief Kennedy or the members of the City Council had personally participated in the alleged deprivations of the Sanders' rights. We reverse.
 
 
 15
 Where plaintiffs have based their claim for liability directly on unconstitutional policies or customs and not on the doctrine of respondeat superior, it is erroneous for a district court to dismiss the individual defendants. Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir.1978); see Heller v. Bushey, 759 F.2d 1371, 1375 (9th Cir.1985) ("The proper individual defendants in this action are those officials who were in office before or at the time [the plaintiff] was arrested and who may have adopted a plan or policy authorizing or approving the unconstitutional conduct"), rev'd and remanded on other grounds sub nom, City of Los Angeles v. Heller, --- U.S. ---, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986); Wanger v. Bonner, 621 F.2d 675, 679-81 (5th Cir.1980) (plaintiff must establish causal connection between act of supervisory official and alleged constitutional violation, such as that subordinates acted pursuant to policies implemented by supervisor), cited with approval in Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675, 680-81 (9th Cir.1984). Under Johnson and Heller, the Sanders are entitled to proceed with their action against Chief Kennedy and the Council members. The Sanders have alleged that their rights were violated pursuant to an "official policy, practice and custom" of the City of Anaheim[6] and its Police Department. They have further contended that their constitutional rights were violated because the individual defendants selected, trained, employed, and retained as Anaheim police officers persons who were predisposed to violate citizens' constitutional rights. These allegations are sufficient to give rise to a cause of action under section 1983 against Chief Kennedy and the Council members. See Johnson and Heller, supra. Accordingly, the court erred in dismissing these individual defendants.
 
 
 16
 The appellees contend that the district court's dismissal of Chief Kennedy and the Council members is supported by our decision in Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675 (9th Cir.1984). Although Ybarra does state that a supervisor cannot be held personally liable for the constitutional deprivations caused by his subordinates, absent his personal participation or direction in the deprivation, id. at 680, the appellees' heavy reliance on the language in Ybarra is misplaced. In Johnson v. Duffy, 588 F.2d 740, 743-44 (9th Cir.1978), we stated:
 
 
 17
 [P]ersonal participation is not the only predicate for section 1983 liability. Anyone who "causes" any citizen to be subjected to a constitutional deprivation is also liable. The requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury.
 
 
 18
 The Sanders' complaint alleges a direct causal connection between their injuries and the conduct of the defendants. The Sanders contend that their constitutional rights were violated because Chief Kennedy, the City and the Council selected, trained, employed, and retained police officers predisposed to violate their constitutional rights. The Sanders further contend that the challenged hiring practices constituted deliberate indifference to, and gross neglect on the part of these defendants of, the Sanders' constitutional rights. These contentions allege a sufficient causal link to state a cause of action under section 1983 against the members of the Anaheim City Council and Chief Kennedy.[7]
 
 
 19
 In sum, because the Sanders' complaint seeks to establish the defendants' section 1983 liability on the basis of official customs and policies, and not a theory of respondeat superior, the Sanders are entitled under Johnson and Heller to pursue their action against these individual defendants. The district court erred in dismissing the defendants.
 
 
 20
 The judgment of the district court is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.
 
 
 
 [1]
 The Supreme Court in Parratt held that the negligent, random, and unauthorized deprivation of a prisoner's property was not actionable under section 1983 because state law offered a post-deprivation remedy adequate to satisfy the guarantee of procedural due process contained in the fourteenth amendment. 451 U.S. at 541-44, 101 S.Ct. at 1916-1917. Subsequently, the Court extended the Parratt analysis to situations involving intentional as well as negligent deprivations of property by state officials. Hudson v. Palmer, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Very recently, the Court overruled Parratt to the extent that Parratt left open the possibility that a negligent injury to life or liberty could give rise to a Sec. 1983 due process claim. Daniels v. Williams, --- U.S. ---, ---, 106 S.Ct. 662, 666, 88 L.Ed.2d 662 (1986)
 
 
 [2]
 On appeal, the Sanders urge only their Sec. 1983 claim
 
 
 [3]
 All of the recited facts are allegations of the complaint, which we must accept as true on this appeal from a dismissal of the complaint
 
 
 [4]
 In California, municipalities are liable in tort where their wrongful conduct causes personal injury to third parties. See, e.g., City of Los Angeles v. Superior Court, 33 Cal.App.3d 778, 109 Cal.Rptr. 365, 367 (1973) (municipality may be held liable for assault and battery committed by a police officer)
 
 
 [5]
 Several other circuits have held that a Section 1983 action grounded on the fourth amendment is not barred by Parratt. See Gilmere v. City of Atlanta, 774 F.2d 1495 (11th Cir.1985) (en banc), cert. denied, --- U.S. ----, ---, 106 S.Ct. 1970, 1993, 90 L.Ed.2d 654 (1986); Augustine v. Doe, 740 F.2d 322, 326 (5th Cir.1984); Wolf-Lillie v. Sonquist, 699 F.2d 864, 872 (7th Cir.1983)
 
 
 [6]
 A local government entity may be sued under Sec. 1983 where the alleged constitutional tort was inflicted in execution of an official policy adopted by the responsible policy-making officers of that entity. Monell v. New York City Department of Social Services, 436 U.S. 658, 690-91, 98 S.Ct. 2018, 2035-36, 56 L.Ed.2d 611 (1978); Guillory v. County of Orange, 731 F.2d 1379, 1381-82 (9th Cir.1984). The local governmental entity may be liable in appropriate circumstances even though the policy in question represents only a single decision by the governmental policymakers. Pembaur v. City of Cincinnati, --- U.S. ---, -------, 106 S.Ct. 1292, 1298-99, 89 L.Ed.2d 452 (1986)
 
 
 [7]
 The Supreme Court recently considered the question whether inadequate training alone could constitute a basis for municipal liability under section 1983. See City of Oklahoma City v. Tuttle, --- U.S. ---, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). The results were inconclusive. Tuttle held only that an isolated instance of police misbehavior is inadequate to prove the knowledge and acquiescence by a city policymaker in such conduct. Id. at 2435-36. The Court, in a plurality opinion, reserved the question whether a policy not itself unconstitutional, such as inadequate training, could be a policy leading to liability under Monell. Id. at 2436 n. 7. See also Grandstaff v. City of Borger, Tex., 767 F.2d 161, 170-71 (5th Cir.1985) (reckless disregard for life and safety attributable to example or acceptance of policymakers supports Sec. 1983 liability)